# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LEGUIDE.COM SAS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Misc. No. 21-mc-219-JLH-SRF |
| | ) |
| GOOGLE LLC AND ALPHABET INC., | ) |
| | ) |
| Respondents. | ) |
| | ) |

## MEMORANDUM ORDER

Pending before the Court is Petitioner's Objection (D.I. 56) to Magistrate Judge Fallon's Memorandum Order (D.I. 55) denying Petitioner's Application for an Order of Judicial Assistance Pursuant to 28 U.S.C. § 1782 (D.I. 1). I have reviewed the parties' submissions[1] and analyzed the issues *de novo*.[2] For the reasons below, the Objection (D.I. 56) will be overruled and the Application (D.I. 1) will be denied.

1. The Court writes primarily for the parties and assumes familiarity with Petitioner's Application and Judge Fallon's Report and Recommendation. Briefly, Petitioner LeGuide.com SAS's Application seeks discovery from Respondents Google LLC and Alphabet Inc. for use in a proceeding before the Paris Commercial Court (the "French Proceeding" or "French Tribunal")

---

[1] (D.I. 1, 2, 3, 4, 7, 8, 10, 11, 14, 15, 16, 17, 18, 20, 21, 22, 23, 28, 30, 31, 32, 33, 35, 36, 37, 38, 39, 41, 43, 49, 50, 51, 52, 53, 55, 56.)

[2] The Third Circuit has not decided whether a magistrate judge's decision on a § 1782 application is "dispositive"—meaning that it should be issued as a "Report and Recommendation" to the district judge and reviewed *de novo*, *see* 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. Proc. 72(b)— or "nondispositive"—meaning that it may be ordered by the magistrate judge and may be reconsidered by the district court judge only when it is clearly erroneous or contrary to law. *See Arcelik A.S. v. E.I. DuPont de Nemours & Co.*, 856 F. App'x 392, 396 n.6 (3d Cir. 2021). Out of an abundance of caution, the Court applies the heightened *de novo* standard.

regarding allegations that Respondents (and certain related European entities) engaged in anticompetitive practices. The French Proceeding is a "follow-on" damages action based on the European Commission's finding that Google abused its dominant position in the online comparison-shopping market in Europe by self-preferencing its own comparison-shopping engine and demoting competing comparison-shopping engines on its search engine results page (the "EC Shopping Decision"). The EC Shopping Decision was appealed to the European Court of Justice, which upheld the judgment in its entirety in September 2024.

2. In 2018, Petitioner filed a request for documents in the French Tribunal. (D.I. 4 ¶ 25; Ex. 7.) Respondents opposed that request and sought a stay of the French Proceeding during the pendency of the EC Shopping Decision appeal. (D.I. 4 ¶ 26.) Agreeing with Respondents, the French Tribunal stayed the case and rejected Petitioner's discovery request. (*Id.* ¶ 27; Ex 8.)

3. While the French Proceeding was stayed, Petitioner filed the pending § 1782 Application, which contains nine separate requests for categories of documents from Respondents. (D.I. 3, Ex. 2 at 8–11 (Petitioner's initial document requests).) Respondents opposed the Application, and the Court ordered briefing. (D.I. 12.)

4. On April 12, 2022, the Court held a status conference on the Application. I preliminarily found that at least Petitioner's Requests No. 1 through 5 were "overbroad on their face" but that "the record is insufficient for the Court to make its own decision about how those requests should be narrowed or if they should be narrowed." (D.I. 50, Ex. 1 at 6.) I explained that "a request for all documents produced in another proceeding[3] is not an appropriate request[.]" (*Id.*

---

[3] For example, Request No. 1 in Petitioner's Application sought "All Documents and Communications produced by Google to the European Commission in the context of the EC Google Shopping case" and "Google AdSense case." (D.I. 3, Ex. 2 at 8.) Google represented that this request alone would encompass more than 52,000 documents (over 225,000 pages) requiring nearly 2,000 attorney review hours. (D.I. 18 ¶¶ 6–12.)

at 8.) With respect to Petitioner's remaining requests, I stated that "the Court is unable to tell on this record if they are proportionate and/or unduly burdensome based on the briefing." (*Id.*)

5. Following the conference, the parties responded to the Court's request for further information and informed the Court of developments in the foreign proceedings. (D.I. 30, 31, 32, 35, 36, 37, 38, 39, 41.) Meanwhile, Petitioner returned to the French Tribunal and sought a lift of the stay, which the French Tribunal denied. (D.I. 41.)

6. On February 14, 2023, the Court entered an order staying this case. (D.I. 42.) I concluded that the most efficient course of action was to stay this action until the EC Shopping Decision appeal was resolved. (*Id.* at 3.) In reaching that conclusion, I found that "Petitioners' discovery requests are overbroad on their face, and Respondents have represented that there are more than six million responsive documents (more than thirty million pages) that would need to be reviewed, which would require an estimated 200,000-plus hours of attorney time[.]" (*Id.* at 2.) I further explained that "the Court is not inclined to expend its own limited judicial resources at this time to attempt to trim Petitioners' requests to something more reasonable[.]" (*Id.* at 3.)

7. After the European Court of Justice upheld the EC Shopping Decision, Petitioner moved to lift the stay and amend its subpoena requests. (D.I. 45.) I then referred the case to Judge Fallon (D.I. 46), and the parties submitted additional information (D.I. 49, 50, 51, 52, 53, 54).

8. In a thorough, 13-page Memorandum Order, Judge Fallon granted Petitioner's motion to lift the stay, denied Petitioner's Application, and denied as moot Petitioner's motion to amend its subpoena requests. (D.I. 55.) Petitioner objected (D.I. 56), and Respondents responded (D.I. 57).[4]

---

[4] Petitioner does not challenge the lifting of the stay or the denial of its motion to amend its subpoena requests.

9. The Court articulated the legal standards applicable to a § 1782 request in its Memorandum Order in *In re Mun*, No. 22-mc-243, 2023 WL 7074016, at *3 (D. Del. Oct. 26, 2023):

> Section 1782 of Title 28 authorizes a district court, "upon the application of any interested person," to "order" a person "resid[ing]" or "found" in this district to give testimony or produce documents "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a). In accordance with *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), the court follows a two-step process to determine whether to grant judicial assistance under 28 U.S.C. § 1782. First, the court analyzes whether § 1782 authorizes the requested discovery. *Id.* at 263–64. If the statutory conditions are satisfied, the court then determines in its discretion whether the requested discovery should be allowed, taking into consideration certain factors identified by the Supreme Court in Intel. *Id.* Those factors are "(1) whether the evidence sought is within the foreign tribunal's jurisdictional reach, and thus accessible absent section 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof gathering restrictions or other policies of a foreign country or the United States; (4) whether the subpoena contains unduly intrusive or burdensome requests." *In re O'Keeffe*, 646 Fed. App'x 263, 266 (3d Cir. 2016) (citing *Intel*, 542 U.S. at 264–65). However, "*Intel* does not mandate that every factor support a court's exercise of discretion or that all factors need even be considered. Rather, it provided the factors to illuminate considerations relevant to the decision of whether to authorize assistance for use in proceedings before a foreign tribunal." *In re Eli Lilly & Co.*, 37 F.4th 160, 168 (4th Cir. 2022).

10. Petitioner does not object to Judge Fallon's analysis of the statutory elements and objects only to Judge Fallon's analysis of the discretionary *Intel* factors. (D.I. 56 at 1–4.)

11. Petitioner first contends that the first *Intel* factor supports it because "Petitioner is unable to request the documents it requires with sufficient specificity and precision to obtain them through the French Proceeding." (D.I. 56 at 2 (quoting D.I. 2 at 14, 15).) But the first *Intel* factor

4

turns on whether the discovery is "'unobtainable' in the foreign forum because it is outside the foreign tribunal's jurisdictional reach." *SPS Corp I, Fundo de Investimento em Direitos Creditórios Não Padronizados v. Gen. Motors Co.*, 110 F.4th 586, 592 (3d Cir. 2024) (quoting *Intel*, 542 U.S. at 264). Petitioner doesn't contend that the documents it seeks are outside the French Tribunal's jurisdiction—nor could it, as Respondents are parties to the French Proceeding and Petitioner has already asked the French Tribunal for the documents it seeks and was rebuffed. "The only sense in which [Petitioner's requested discovery] is 'unobtainable' stems from [Petitioner's] repeated litigation defeats, not because of geographic and jurisdictional barriers." *SPS Corp I*, 110 F.4th at 592. I conclude that the first *Intel* factor supports Respondents.

12. Petitioner next contends that *Intel*'s second factor weighs in its favor and that Judge Fallon wrongly concluded that the second factor is neutral. Petitioner's argument is that since Respondents bear the burden under the second factor, it must support Petitioner. Petitioner's argument is two sentences long, doesn't contend that Respondents didn't meet their burden, and merely asserts the legal standard and a conclusion that it supports Petitioner. (D.I. 56 at 2–3.) Having reviewed the issue *de novo*, nothing in the record suggests that the French Tribunal would or wouldn't be receptive to evidence obtained via § 1782. What the record does show is that the French Tribunal rejected Petitioner's effort to obtain the requested discovery. I am not required under such circumstances to treat the second factor as favoring Petitioner. *See SPS Corp I*, 110 F.4th at 594 (where foreign court had already denied requested discovery, respondents in § 1782 proceeding were "not require[d] . . . to prove a negative, *i.e.*, that those courts or [the foreign] legal system generally would under no circumstances be receptive to the § 1782 discovery"). Judge Fallon did not err in treating this *Intel* factor as neutral.

13. Petitioner next contends that the third *Intel* factor supports it because Petitioner hasn't circumvented the French Tribunal's orders and isn't required to first seek discovery from the foreign tribunal. (*Id.* at 3–4.) Although Petitioner is correct that it wasn't required to first seek discovery from the French Tribunal, here Petitioner did seek discovery from the French Tribunal and was rebuffed. The French Tribunal indicated that Petitioner could renew its discovery requests, and the record before the Court shows that Petitioner has not done so. (D.I. 51 ¶¶ 9–10.) It is not wrong to conclude that the third *Intel* factor weighs against granting a discovery request where the petitioner has already sought the same documents from the foreign tribunal and the foreign tribunal has not signaled receptivity to discovery obtained under § 1782. *See, e.g.*, *SPS Corp I*, 110 F.4th at 594 (upholding district court's determination that allowing a petitioner to obtain § 1782 discovery after seeking the same discovery from the foreign tribunal would "undermine finality, encourage parties to attempt to circumvent adverse foreign rulings, and generate inefficiency"); *In re Eli Lilly & Co.*, 37 F.4th at 168 (affirming district court's finding that a petitioner had attempted to circumvent the foreign tribunal's discovery orders because "the categories of documents" the petitioner requested in the foreign tribunal "appear to overlap significantly with those requested by [the petitioner] in its § 1782 application"); *In re Mun*, No. 22-mc-243, 2023 WL 7074016, at *5 (D. Del. Oct. 26, 2023) (finding that the third *Intel* factor weighed in favor of denying a § 1782 application where the discovery requests conflicted with the foreign tribunal's discovery orders). The third *Intel* factor favors Respondents.

14. Finally, Petitioner objects to Judge Fallon's conclusion that the fourth *Intel* factor weighs against granting discovery. Petitioner first contends its requests are not overbroad because the Court has not already held that Petitioner's requests are overbroad. (D.I. 56 at 4 ("Notably, Judge Hall did not deny the Application, which would have made sense if the requests were facially

6

unacceptable.").) This is a puzzling argument. During the hearing Petitioners cite for this proposition, I repeatedly expressed concern that many of Petitioner's requests were facially overbroad. (D.I. 50, Ex. 1 at 6 ("I agree with Respondents that those requests are overbroad on their face"), 7 ("I'm very disinclined to require production of everything produced by Respondents to the European Commission or to other tribunals. . . . [T]here has to be appropriate requests from the Petitioners to begin with, and a request for all documents produced in another proceeding is not an appropriate request, in my view.").) As for Petitioner's other requests, I stated that "the Court is unable to tell on this record" whether those requests were overbroad and/or unduly burdensome. (*Id.* at 7.) Accordingly, I declined to rule on the Application and ordered the parties to provide additional information regarding Petitioner's requests, Respondents' positions, and the status of the foreign proceedings. (*Id.* at 3–8.) What's more, once the parties provided that information, I stayed the case and explained that "Petitioner['s] discovery requests are overbroad on their face, and Respondents have represented that there are more than six million responsive documents (more than thirty million pages) that would need to be reviewed, which would require an estimated 200,000-plus hours of attorney time." (D.I. 42 at 2.) Petitioner's argument that the Court's prior statements suggest that Petitioner's requests are not overbroad is, at best, mistaken.

15. In any event, I have reviewed Petitioner's requests *de novo* and find that they remain facially overbroad and unduly burdensome. Notwithstanding that the Court has repeatedly explained that Petitioner's requests are overbroad and provided Petitioner opportunities to narrow or further justify their requests, Petitioner has not done so. Instead, Petitioner merely reasserts the same requests the Court previously rejected without materially narrowing them.[5] Nor has

---

[5] Petitioner's current Request Nos. 2 through 6 are nearly identical to Petitioner's initial Requests No. 5 through 9. (D.I. 3, Ex. 2 at 8–11; D.I. 49, Ex. A at 8–11.) Although Petitioner dropped its initial Requests No. 2 through 4, those requests were plainly overbroad as the Court

7

Petitioner rebutted Respondents' repeated explanations that Petitioner's requests would require a substantial number of custodians and attorney review hours. (D.I. 18, 52.)

16. Accordingly, on this record, the Court finds that Petitioner's requests are overbroad and unduly burdensome. Because Petitioner has had ample opportunity to narrow or further justify its requests and has failed to do so, the Court will exercise its discretion to decline to narrow Petitioner's requests.[6] The fourth *Intel* factor weights in favor of Respondents.

17. Balancing the *Intel* factors, the Court concludes that they weigh strongly in favor of Respondents. The first, third, and fourth *Intel* factors support Respondents, and the second factor is (at best) neutral. Accordingly, Petitioner's § 1782 Application will be denied.

For the reasons above, IT IS HEREBY ORDERED THAT:

1. Petitioner's Objections (D.I. 56) are OVERRULED.

---

explained. The Court does not credit Petitioner for dropping requests that shouldn't have been made in the first place. And Petitioner has not materially narrowed the scope of its re-asserted requests.

[6] *See Intel*, 542 U.S. at 265 ("[U]nduly intrusive or burdensome requests may be rejected or trimmed."); *In re Ex Parte Energy Horizons Corp.*, 647 F. App'x 83, 87 (3d Cir. 2016) ("We realize, of course, that the district court could have modified the [request], however, it was under no obligation to do so."); *see also, e.g.*, *In re Oasis Fund LP*, No. 22-mc-112, 2022 WL 17669119, at *14 (S.D. Cal. Dec. 14, 2022) ("Nor is it the Court's responsibility to attempt to itself narrow these overbroad requests to the scope of the [foreign] Proceeding. While the Court is certainly aware that it has the authority and discretion to do so, in this instance, the requests are simply too overbroad for the Court to engage in the process."); *In re Application for Discovery for Use in Foreign Proc. Pursuant to 28 U.S.C. § 1782*, No. 17-4269, 2019 WL 168828, at *14 (D.N.J. Jan. 10, 2019) ("These requests, however, are facially and almost universally overbroad. In such a case, where nearly every request is unduly expansive, the Court is not required to take over the drafting. It is one thing to seek U.S. judicial assistance in serving a subpoena; it is another to make a kitchen-sink discovery request . . . and delegate responsibility to the U.S. tribunal to sort it out."); *In re Judicial Assistance Pursuant to 28 U.S.C. § 1782 by Macquarie Bank Ltd.*, No. 14-797, 2015 WL 3439103, at *9 (D. Nev. May 28, 2015) ("When a party chooses to serve overly broad discovery, it runs the risk that the discovery will be denied outright without an opportunity to narrow it.").

2. Petitioner's Application for an Order of Judicial Assistance Pursuant to 28 U.S.C. § 1782 (D.I. 1) is DENIED.

3. The Clerk of Court is directed to close the case.

Dated: December 12, 2025

_____
The Honorable Jennifer L. Hall
UNITED STATES DISTRICT JUDGE